## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DANIELLE BROWN, Individually and
for Others Similarly Situated

v.

MCLAREN PORT HURON and
MCLAREN HEALTH CARE
CORPORATION

**Case No.**

Jury Trial Demanded

FLSA Collective Action
Pursuant to 29 U.S.C. § 216(b)

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Danielle Brown ("Brown") brings this collective action to recover unpaid overtime and other damages from McLaren Port Huron ("Port Huron") and McLaren Health Care Corporation ("McLaren") (together "Defendants").

2.      McLaren and Port Huron jointly employ Brown as Patient Access Representative – Team Lead at McLaren's Port Huron facility.

3.      Like the Putative Class Members (as defined below), Brown regularly works more than 40 hours in a workweek.

4.      But Defendants do not pay these employees for all the hours they work.

5.      Instead, Defendants automatically deduct 30 minutes a day from these employees' work time for so-called "meal breaks."

6.      Brown and the Putative Class Members are thus not paid for this time.

7.     But Defendants fail to provide Brown and the Putative Class Members with *bona fide* meal breaks.

8.     And Brown and the Putative Class Members do not actually receive *bona fide* meal breaks.

9.     Instead, Defendants require Brown and the Putative Class Members to remain on-duty and performing compensable work throughout their shifts and continuously subject them to interruptions during their unpaid "meal breaks."

10.    Defendants' auto-deduction policy violates the Fair Labor Standards Act (FLSA) by depriving Brown and the Putative Class Members of overtime pay for hours worked in excess of 40 each workweek.

## JURISDICTION & VENUE

11.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.    This Court has general personal jurisdiction over Port Huron because is a domestic corporation headquartered in Port Huron, Michigan.

13.    This Court has general personal jurisdiction over McLaren because McLaren is a domestic corporation headquartered in Grand Blanc, Michigan.

14.    Venue is proper because Defendants both reside in Michigan, and McLaren maintains its headquarters in Grand Blanc, Michigan, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

**PARTIES**

15.    Brown has worked for Defendants as Patient Access Representative –
Team Lead at McLaren's Port Huron facility from approximately March 2023 through
the present.

16.    Throughout her employment, Defendants jointly classified Brown as non-
exempt and paid her on an hourly basis.

17.    Throughout her employment, Defendants subjected Brown to their
common practice of automatically deducting 30 minutes a workday from her recorded
work time for so-called "meal breaks."

18.    But throughout her employment, Defendants have failed to provide
Brown with *bona fide* meal breaks.

19.    And throughout her employment, Brown has not actually received *bona
fide* meal breaks.

20.    Brown's written consent for McLaren is attached as **Exhibit 1**.

21.    Brown's written consent for Port Huron is attached as **Exhibit 2**.

22.    Brown brings this action on behalf of herself and other similarly situated
hourly, non-exempt employees who have worked for Defendants at the Port Huron
facility and were subject to Defendants' automatic meal break deduction policy.

23.    Defendants automatically deduct 30 minutes per shift from these
employees' recorded work time for so-called "meal breaks."

24.    But Defendants uniformly require these employees to remain on-duty and performing compensable work throughout their shifts, including during their unpaid "meal breaks."

25.    Thus, Defendants uniformly deprive these employees of overtime pay for hours worked in excess of 40 each workweek, in violation of the FLSA.

26.    The Putative Collective of similarly situated employees is defined as:

> **All hourly, non-exempt employees, who worked for, or on behalf of, McLaren and Port Huron at the Port Huron facility, who received an automatic meal period deduction at any time during the past 3 years ("Putative Class Members" or "Putative Collective").**

27.    McLaren is a Michigan non-profit corporation that maintains its headquarters in Grand Blanc, Michigan.

28.    McLaren may be served with process by serving its registered agent: **Philip A. Incarnati, One McLaren Parkway, Grand Blanc, Michigan 48439**, or wherever he may be found.

29.    Port Huron is a Michigan non-profit corporation that maintains its headquarters in Port Huron, Michigan.

30.    Port Huron may be served with process by serving its registered agent: **Erica Cecava, 1221 Pine Grove Ave, Port Huron, Michigan 48060**, or wherever she may be found.

## COVERAGE UNDER THE FLSA

31.     At all relevant times, McLaren was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

32.     At all relevant times, Port Huron was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

33.     At all relevant times, McLaren, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

34.     At all relevant times, Port Huron, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

35.     At all relevant times, McLaren was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because McLaren, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

36.     At all relevant times, Port Huron was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because Port Huron, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

37. At all relevant times, McLaren has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

38. At all relevant times, Port Huron has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

39. At all relevant times, Defendants jointly employed Brown and the Putative Class Members as "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

40. At all relevant times, Brown and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

41. Defendants uniformly deduct 30 minutes a shift from Brown's and the Putative Class Members' wages for meal breaks, even when these employees do not actually receive a *bona fide*, uninterrupted meal break.

42. As a result, Defendants fail to pay Brown and the Putative Class Members for compensable work hours, including overtime hours, in violation of the FLSA.

43. Defendants' automatic meal break deduction policy, which deprives Brown and the Putative Class Members of overtime compensation for the weeks in which these employees work in excess of 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

44. McLaren bills itself as "a $6.6 billion, fully integrated health care delivery

system . . . [that] includes 13 hospitals in Michigan, ambulatory surgery centers, imaging centers, a 490-member employed primary and specialty care physician network."[1]

45.     Indeed, McLaren provides service across Michigan, which are all a part of its McLaren network:



---

[1] https://www.mclaren.org/ (last accessed June 14, 2024).
[2] https://www.mclaren.org/main/about-mclaren-health-care (last accessed June 14, 2024).

46. "McLaren Port Huron is a 186-bed non-profit hospital located in Port Huron, Michigan, with a strong history of providing quality, compassionate care."[3]

47. McLaren and Port Huron have common ownership and/or management.

48. For example, David Thompson is a member of McLaren's Board of Directors, as well as Port Huron's Board of Trustees. **Exhibit 3** (McLaren Health Care Conversations, 2023 Annual Report) at 15.

49. David Mazurkiewicz is a member of McLaren Fint's Board of Trustees, McLaren Health Plan's Board of Directors, McLaren Health Plan Community's Board of Directors, MDWise's Board of Directors, McLaren Integrated HMO Group's Board of Directors, McLaren Health Management Group's Board of Directors, McLaren Medical Group's Board of Directors, McLaren High Performance Network's Board of Managers, is the Executive Vice President and Chief Financial Officer of McLaren Health Care, as well as serving as Port Huron's Treasurer. *Id.* at 15-16; **Exhibit 4** (McLaren Port Huron LARA).

50. Chad Grant serves on Port Huron's Board of Trustees, as well as 14 other McLaren Boards. **Exhibit 3** at 15-16.

51. Likewise, McLaren and Port Huron have shared and/or centralized human resources functions.

---

[3] https://www.mclaren.org/port-huron/mclaren-port-huron-home (last accessed June 14, 2024).

52.     For example, Laura Gibbard holds the title of Regional Vice President for Human Resources at Port Huron, as well as McLaren Macomb and McLaren Oakland. **Ex. 3** at 17.

53.     And McLaren maintains centralized control of recruiting and hiring at all McLaren facilities, including the Port Huron facility. *See* **Ex. 3** at 3, 7, 11.

54.     Thus, to work at any McLaren facility, including the Port Huron facility, Brown and the Putative Class Members must apply though McLaren.[4]

55.     McLaren and Port Huron also have shared business operations.

56.     For example, McLaren utilizes a system-wide appointment scheduling across Port Huron and other McLaren facilities. *See* **Ex. 3** at 12.

57.     Likewise, McLaren has centralized its staffing operations and digitized the McLaren data systems for staff across its healthcare network, including employees working at the Port Huron facility like Brown and the Putative Class Members. *See* **Ex. 3** at 4.

58.     Indeed, McLaren touts that its "entire complement of employees across the system stepped up to do their part in reducing expenses corporatewide." **Ex. 3** at 5.

59.     McLaren's Operations Statistics show data across the entire McLaren

---

[4] https://careers.mclaren.org/ (last accessed June 14, 2024).

universe, and it does not limit its standardization based on facility.[5]

60. To complete their shared business objectives, McLaren and Port Huron jointly employ patient care workers, including Brown and the Putative Class Members, to provide patient care services and treat patients in McLaren's Port Huron facility.

61. McLaren hires and treats these employees just like regular employees.

62. McLaren, jointly with Port Huron, controls all meaningful aspects of these patient care employees' employment.

63. McLaren and Port Huron jointly control Brown's and the Putative Class Members' rates and methods of pay.

64. McLaren and Port Huron jointly control Brown's and the Putative Class Members' schedules and assignments.

65. McLaren and Port Huron jointly control Brown's and the Putative Class Members' patient care work.

66. McLaren and Port Huron jointly require Brown and the Putative Class Members to follow McLaren's and Port Huron's policies, procedures, and protocols.

67. Brown's and the Putative Class Members' patient care work must strictly adhere to the uniform quality standards put in place by McLaren and Port Huron.

68. Indeed, upon hiring, McLaren and Port Huron jointly require all the

---

[5] https://www.mclaren.org/main/about-mclaren-health-care (last accessed June 14, 2024).

patient care employees who work in the Port Huron facility, including Brown and the Putative Class Members, to complete trainings on McLaren's uniform policies, procedures, and protocols to ensure their work conforms to the same.

69.     McLaren and Port Huron prohibit Brown and the Putative Class Members from varying their job duties outside of the predetermined parameters and require Brown and the Putative Class Members to follow McLaren's and Port Huron's policies, procedures, and directives.

70.     McLaren and Port Huron jointly prohibit Brown and Putative Class Members from straying from McLaren's and Port Huron's procedures, plans, protocols, and specifications.

71.     McLaren enforces the same employee expectations for all its employees, regardless of what McLaren facility they are assigned.[6]

72.     Without the patient care work Brown and the Putative Class Members perform, McLaren and Port Huron would not be able to complete their common business objective of providing healthcare services to patients in McLaren's Port Huron facility.

73.     Thus, Brown's and the Putative Class Members' work is integral to, and simultaneously benefits, McLaren's and Port Huron's shared business objectives.

---

[6] https://www.mclaren.org/main/what-we-expect-from-our-employees (last accessed June 14, 2024).

74.     Brown and the Putative Class Members rely on McLaren and Port Huron for work and compensation.

75.     Brown and the Putative Class Members do not substantially invest in the tools required to complete the overall job they are assigned.

76.     Rather, McLaren and Port Huron incur large-scale business and operating expenses like marketing, payroll, equipment, tools, healthcare facilities, and materials.

77.     At all relevant times, McLaren and Port Huron jointly maintained control, oversight, and direction of Brown and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

78.     At all relevant times, McLaren and Port Huron jointly possessed the authority to hire, fire, and discipline Brown and the Putative Class Members.

79.     At all relevant times, McLaren and Port Huron jointly supervised and controlled Brown's and the Putative Class Members' schedules, rate and method of pay, work, and other conditions of their employment.

80.     At all relevant times, McLaren and Port Huron jointly maintained employment records for Brown and the Putative Class Members.

81.     In sum, at all relevant times, McLaren and Port Huron jointly employed Brown and the Putative Class Members.

82.     McLaren and Port Huron jointly classify these patient care employees working at McLaren's Port Huron facility, including Brown and the Putative Class

Members, as non-exempt from overtime and uniformly pay them on an hourly basis.

83. For example, McLaren and Port Huron jointly employed Brown as a Patient Care Access Representative – Team Lead at McLaren's Port Huron facility from approximately March 2023 through the present.

84. As a Patient Care Access Representative – Team Lead, Brown's primary responsibilities include greeting and checking in patients arriving in the ER, assisting with and ensuring admission paperwork is properly completed, checking in patients arriving via EMS transport, informing incoming patients about financial assistance programs, arranging translators as necessary, correcting billing and demographic intake information, and notifying patients' out of network insurance of pending treatment as necessary.

85. Throughout her employment, Defendants have jointly subjected Brown to Defendants' common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for "meal breaks," regardless of whether she actually received a *bona fide* meal break.

86. But throughout her employment, Brown has not actually received *bona fide* meal breaks.

87. Brown and the Putative Class Members perform their jobs under Defendants' joint supervision, and using materials, equipment, and technology approved and supplied by Defendants.

88.     Defendants jointly require Brown and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

89.     At the end of each pay period, Brown and the Putative Class Members receive wages from Port Huron that were determined by common systems and methods that McLaren and Port Huron jointly select and control.

90.     Defendants jointly require their hourly, non-exempt patient care employees, including Brown and the Putative Class Members, to record their hours worked using Defendants' timeclock system (Kronos).

91.     Further, Defendants subject their hourly, non-exempt patient care employees working at the Port Huron facility, including Brown and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for "meal periods" each shift.

92.     Specifically, Defendants automatically deduct 30 minutes from Brown's and the Putative Class Members' recorded time worked each shift for "meal periods," regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

93.     But Defendants fail to provide Brown and the Putative Class Members with *bona fide* meal periods.

94.     And Brown and the Putative Class Members do not actually receive *bona*

*fide* meal breaks.

95.     Instead, Defendants require Brown and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Defendants continuously subjecting them to work interruptions during their unpaid "meal periods."

96.     Indeed, because of these constant work interruptions, Brown and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

97.     Rather, during their unpaid "meal breaks," Brown and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

98.     Thus, Brown and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Defendants' – not these employees' – shared predominant benefit.

99.     This unpaid time is compensable under the FLSA because Defendants knew, or should have known, that (1) Brown and the Putative Class Members were performing unpaid compensable work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, (4) the meal period was less than 30 consecutive minutes, (5) they were not free to engage in personal

activities during their meal periods because of constant interruptions, (6) they remained on Defendants' premises, and/or (7) they predominantly spent their unpaid meal periods performing their regular patient care duties for Defendants' shared predominant benefit.

100. Defendants jointly failed to exercise their shared duty to ensure Brown and the Putative Class Members were not performing work that Defendants did not want performed during their unpaid "meal breaks."

101. Despite accepting the benefits, Defendants did not pay Brown and the Putative Class Members for the compensable work they performed during their "meal breaks."

102. Defendants know Brown and the Putative Class Members routinely perform work "off the clock" during their unpaid "meal breaks" because Defendants expect and require these employees to do so.

103. But Defendants do not pay Brown and the Putative Class Members for their routine "off the clock" meal break work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA.

104. Brown worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

105. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

106.   And Brown and the Putative Class Members regularly are also required to work during their unpaid "meal breaks" "off the clock" in order to complete their job duties and patient care responsibilities.

107.   As a result, Brown and the Putative Class Members work in excess of 40 hours in a typical workweek.

108.   When Brown and the Putative Class Members work more than 40 hours in a workweek, Defendants do not pay them 1.5 times their regular hourly rate for all overtime hours worked due to Defendants' failure to include time these employees work during their unpaid meal breaks in their total number of hours worked in a given workweek.

109.   Thus, under Defendants' uniform, automatic meal break deduction policy, Brown and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours, in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

110.   Brown realleges and incorporates all other paragraphs by reference.

111.   Brown brings her FLSA claims as a collective action on behalf of herself and the Putative Class Members pursuant to Section 216(b) of the FLSA.

112.   The Putative Class Members are victimized by Defendants' pattern, practice, and/or policy of automatically deducting compensable work time from their

wages for so-called "meal breaks" that are not *bona fide*, which is in willful violation of the FLSA.

113.   Other Putative Class Members work with Brown and indicate they are paid in the same manner, performed similar work, and were subject to Defendants' same automatic meal break deduction policy.

114.   Based on her experiences with Defendants, Brown is aware Defendants' illegal practices are imposed on the Putative Class Members.

115.   The Putative Class Members are similarly situated in all relevant respects.

116.   Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

117.   Therefore, the specific job titles or precise job locations of the various members of the Putative Collective do not prevent collective treatment.

118.   Rather, the Putative Collective is held together by Defendants' uniform automatic meal break deduction policy that systematically deprives Brown and the Putative Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek.

119.   The Putative Class Members are similarly denied overtime pay when they work more than 40 hours in a week.

120.   The overtime owed to Brown and the Putative Class Members can be calculated using the same records and using the same formula.

121.   Brown's experiences are therefore typical of the experiences of the Putative Class Members.

122.   Brown has no interests contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

123.   Like each Putative Class Member, Brown has an interest in obtaining the unpaid overtime wages owed under federal law.

124.   A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

125.   Absent a collective action, many Putative Class Members will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating the FLSA.

126.   Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

127.   Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

128.   The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

129.   Among the common questions of law and fact are:

a. Whether McLaren and Port Huron jointly employed Brown and the Putative Class Members;

b. Whether Defendants engaged in a policy and practice of automatic time deductions for "meal periods" that were not *bona fide*, continuous, and uninterrupted, in violation of the FLSA;

c. Whether Defendants' automatic meal break deduction policy deprived Brown and the Putative Class Members of pay for time worked during "meal periods" that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

d. Whether Defendants failed to pay Brown and the Putative Class Members overtime wages for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA;

e. Whether Defendants knew, or had reason to know, Brown and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA;

f. Whether Defendants decision not to pay Brown and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

- 20 -

g.    Whether Defendants' violations of the FLSA were willful.

130.    Brown and the Putative Class Members sustained damages arising out of Defendants' illegal and uniform employment policy.

131.    Brown knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

132.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts.

133.    Therefore, the issue of damages does not preclude collective treatment.

134.    Defendants are jointly liable under the FLSA for failing to pay overtime to Brown and the Putative Class Members.

135.    Consistent with Defendants' illegal automatic meal break deduction policy, Brown and the Putative Class Members are not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

136.    As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Brown and the Putative Class Members.

137.    Defendants' illegal automatic meal break deduction policy deprived Brown and the Putative Class Members of the premium overtime wages they are owed under federal law.

138.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

139.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

140.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

141.    In fact, because McLaren has centralized its staffing operations and digitized data systems for staff across its network, employee records for the Putative Class Members are readily available through McLaren's centralized data network.

### DEFENDANTS' VIOLATIONS OF THE FLSA WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD FOR THE FLSA

142.    Brown realleges and incorporates all other paragraphs by reference.

143.    Defendants knew they jointly employ the patient care employees that work at McLaren's Port Huron facility, including Brown and the Putative Class Members.

144.    Defendants knew Brown and the Putative Class Members are non-exempt employees entitled to overtime because Defendants uniformly classified and paid them as such.

145.    Defendants knew Brown and the Putative Class Members are paid on an hourly basis because Defendants jointly dictated and controlled the same.

146.    Defendants knew Brown and the Putative Class Members work more than

40 hours in at least one workweek during the last 3 years because Defendants jointly required these employees to record their hours worked using Defendants' timeclock system.

147.   Defendants knew they are subject to the FLSA, including its overtime provisions.

148.   Defendants knew the FLSA requires them to pay employees, including Brown and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

149.   Defendants knew the FLSA requires them to pay Brown and the Putative Class Members for all hours these employees performed compensable work.

150.   Defendants knew they fail to provide Brown and the Putative Class Members with *bona fide* meal breaks.

151.   Defendants knew Brown and the Putative Class Members regularly work during their unpaid meal breaks because Defendants expected and required them to do so.

152.   Defendants knew Brown and the Putative Class Members regularly spend their "meal breaks" substantially performing their normal patient care job duties for Defendants' common predominant benefit.

153.   Defendants knew that, as Brown's and the Putative Class Members'

employers, they had a duty to ensure these employees are not performing work that Defendants do not want performed during their unpaid "meal breaks."

154. Defendants knew Brown and the Putative Class Members perform compensable work during their unpaid "meal breaks."

155. Defendants knew they automatically deduct 30 minutes per shift from Brown's and the Putative Class Members' recorded work time for "meal breaks."

156. Defendants knew they automatically deduct 30 minutes per shift from Brown's and the Putative Class Members' recorded work time for "meal breaks" regardless of whether these employees actually received *bona fide* meal breaks.

157. Defendants knew Brown and the Putative Class Members do not receive *bona fide* meal breaks.

158. Defendants knew they do not pay Brown and the Putative Class Members for all hours these employees performed compensable work, including the compensable work they performed during their unpaid meal breaks.

159. Thus, Defendants knew, or should have known, that they failed to pay Brown and the Putative Class Members overtime wages for all overtime hours worked in violation of the FLSA.

160. Defendants' failure to pay Brown and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours

worked made in good faith.

161.   Indeed, McLaren and its affiliated entities have been sued previously by employees for failing to pay overtime wages for all overtime hours worked, including for automatically deducting compensable work time for meal breaks. *See, e.g., Gloss, et al. v. McLaren Health Care Corp., et al.*, No. 1:24-cv-11526-TLL-PTM (E.D. Mich.); *Hart v. McLaren Health Care Corp., et al.*, No. 4:23-cv-10608-LVP-DRG (E.D. Mich.); *Crane, et al. v. McLaren Health Care Corp., et al.*, No. 4:23-cv-10608-LVP-DRG (E.D. Mich.).

162.   Defendants knowingly, willfully, and/or in reckless disregard carried out this illegal automatic meal break deduction policy that deprives Brown and the Putative Class Members of overtime compensation for all overtime hours worked in willful violation of the FLSA.

## CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER THE FLSA

163.   Brown realleges and incorporates all other paragraphs by reference.

164.   Brown brings her FLSA claims as a collective action on behalf of themselves and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

165.   Defendants violated, and are violating, the FLSA by failing to pay Brown and the Putative Class Members overtime wages for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

166.    Throughout the relevant period, Defendants automatically deducted 30 minutes per shift from Brown's and the Putative Class Members' recorded work time for so-called "meal breaks."

167.    But throughout the relevant period, Brown and the Putative Class Members did not actually receive *bona fide* meal breaks.

168.    Instead, throughout the relevant period, Defendants expected and required Brown and the Putative Class Members to remain on-duty and perform compensable work during their unpaid meal breaks.

169.    Brown and the Putative Class Members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of wages owed for work that they performed and from which Defendants derived a direct and substantial benefit.

170.    Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Brown and the Putative Class Members overtime compensation for all overtime hours worked.

171.    Defendants' failure to pay Brown and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

172.    Accordingly, Brown and the Putative Class Members are entitled to

recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

### JURY DEMAND

173.   Brown demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Brown, individually and on behalf of the Putative Class Members, seeks the following relief:

  a.   An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

  b.   An Order pursuant to Section 16(b) of the FLSA finding Defendants jointly liable for unpaid back wages due to Brown and the Putative Class Members, plus liquidated damages in an amount equal to their unpaid compensation;

  c.   Judgment awarding Brown and the Putative Class Members all unpaid overtime and other damages available under the FLSA;

  d.   An Order awarding attorneys' fees, costs, and expenses;

e.      Pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Jennifer L. McManus
**Jennifer L. McManus (P65976)**
Local Counsel for Plaintiff
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 48067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 24078444
**Olivia R. Beale**
TX Bar No. 24122166
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
obeale@mybackwages.com

**Richard J. (Rex) Burch***
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS IN CHARGE FOR BROWN AND THE PUTATIVE CLASS MEMBERS**